TRINETTE G. KENT (State Bar No. 025180)
E-mail: tkent@kentlawpc.com
KENT LAW OFFICES
3219 E Camelback Rd #588
Phoenix, AZ 85018
Telephone: (480) 247-9644
Facsimile: (480) 717-4781

Anthony Paronich*
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510

Chris R. Miltenberger*
Email: chris@crmlawpractice.com
Law Office of Chris R. Miltenberger, PLLC
1360 N. White Chapel, Suite 200
Southlake, Texas 76092
Telephone: (817) 416-5060

*Attorneys for Plaintiff*

*Pro hac vice motion forthcoming.

**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Sylvia Morris and Jon Powell, individually and on behalf of a class of all persons and entities similarly situated,<br><br>        Plaintiffs<br><br>vs.<br><br>National Cash Offer, LLC,<br><br>        Defendant. | Case No.<br><br><br>**CLASS ACTION COMPLAINT** |

**Preliminary Statement**

1. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communications Commission ("FCC").[1]

2. Plaintiffs Sylvia Morris and Jon Powell bring this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012).

3. In violation of the TCPA, National Cash Offer, LLC ("Cash Offer") made telemarketing calls to a cellular telephone number of Plaintiffs for the purposes of advertising their residential purchasing services using an automated dialing system which is prohibited by the TCPA. Also prohibited by the TCPA, Cash Offer made multiple telemarketing calls to Ms. Morris' number that is on the National Do Not Call Registry.

4. The Plaintiffs never consented to receive the calls, which were placed to them for telemarketing purposes. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, the Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendant.

5. A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing and is consistent both with the private right of action

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶1 (July 10, 2015).

afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

6. Plaintiff Morris is a resident of Texas.

7. Plaintiff Powell is also a resident of Texas.

8. Defendant National Cash Offer, LLC ("National Cash Offer" or "Defendant") is a limited liability company formed under the laws of the State of Arizona and it maintains its principal place of business at 3030 N. 3rd St., Suite 760 in Phoenix, AZ 85012. Cash Offer has a registered agent of Carlos E. Reyes, 7262 W. Kaler Ave., Glendale, AZ 85303.

## Jurisdiction & Venue

9. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

10. Venue is proper under 28 U.S.C. § 1391(b)(1) because the Defendant resides in this District.

## TCPA Background

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The National Do Not Call Registry</u>

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

12. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Automated Telemarketing Calls

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules*

4

*and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

15. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The Growing Problem of Telemarketing Calls

16. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

17. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2

(2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

18. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

19. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

20. Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html

**Factual Allegations**

21. National Cash Offer is in the business of purchasing real estate.

22. To generate business through purchases, National Cash Offer relies on telemarketing.

23. One of National Cash Offer's strategies for telemarketing involves the use of an automatic telephone dialing system ("ATDS") to solicit business from third parties such as Plaintiffs.

24. National Cash Offer engages this use of this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to those individuals who affirmatively respond.

25. Through this method, Cash Offer shifts the burden of wasted time to the consumers it calls with unsolicited messages.

Calls to Ms. Morris

26. On December 26, 2018, January 11, 2019 and February 1, 2019, Ms. Morris received an automated text message from the Defendant.

27. The text messages all had the same message:

> Hi sylvia, my name is Jon, I know this is a bit random but would you consider a cash offer on you property located at 1030 Mountview Dr?

28. The message was "a bit random"; Ms. Morris has never done any business with National Cash Offer and had not given them permission to contact her.

29. Ms. Morris' telephone number, 214-529-XXXX, is assigned to a cellular telephone service.

30. Ms. Morris' telephone number, 214-529-XXXX, has been on the National Do Not Call Registry for more than 30 days prior to the first text message.

Call to Mr. Powell

31. On February 20, 2019, Mr. Powell received an automated text message from the Defendant.

32. The text messages said:

> Hi %%first_name%%, my name is Brittany, I know this is a bit random but would you consider a cash offer on your property located at %%adress%%.

33. Again, the message was "a bit random"; Mr. Powell has never done any business with National Cash Offer and had not given them permission to contact him.

34. Mr. Powell's telephone number, 817-658-XXXX, is assigned to a cellular telephone service.

35. Mr. Powell did not respond to the message.

Common Allegations

36. The text messages were made to promote National Cash Offer's goods and services.

37. The calls were made with an ATDS because they were automatically made from a list of stored telephone numbers loaded into the Defendant's automated texting system. This is supported by the generic nature of the text messages and the fact that all the text messages had identical content.

38. Furthermore, the text to Mr. Powell revealed that a scripted and pre-loaded system was designed to send identical texts, only National Cash Offer forgot to program the specifics for Mr. Powell's text.

39. The calls were not necessitated by an emergency.

40. All parties were in the United States during the calls.

41. Plaintiffs' privacy has been violated by the above-described telemarketing robocalls from, or on behalf of, Defendant. The calls were an annoying, harassing nuisance.

42. Plaintiffs and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls. The calls occupied their cellular telephone lines, rendering them unavailable for legitimate communication.

**Class Action Allegations**

43. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

44. The class of persons Plaintiffs propose to represent are tentatively defined as:

CLASS 1

All persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using an automatic

telephone dialing system or an artificial or prerecorded voice; (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

CLASS 2

All persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made two or more non-emergency telephone calls; (b) promoting Defendant' products or services; (c) to a residential phone number that was listed on the National Do Not Call Registry; (d) within any twelve-month period (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

Excluded from the classes are the Defendant, and any entities in which the Defendant have a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

45. The classes as defined above are identifiable through phone records and phone number databases.

46. The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

47. Plaintiff Morris is a member of the proposed classes.

48. Plaintiff Powell is a member of the first class.

49. There are questions of law and fact common to Plaintiffs and to the proposed classes, including but not limited to the following:

    a. Whether Defendant violated the TCPA by using automated telemarketing to call cellular telephones;

    b.  Whether Defendant placed calls using an automatic telephone dialing system;

    c.  Whether Defendant placed calls without obtaining the recipients' prior express written consent for the call;

    d.  Whether the Plaintiff and the members are entitled to statutory damages because of Defendant' actions.

  50.  Plaintiffs are adequate representatives of the classes because their interests do not conflict with the interests of the class, they will fairly and adequately protect the interests of the class, and they are represented by counsel skilled and experienced in class actions, including TCPA class actions.

  51.  Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

  52.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

53. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## First Cause of Action

## Violation of the TCPA's Automated Calling provisions

54. Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

55. The foregoing acts and omissions of the Defendant constitute violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiffs and members of the Classes using an ATDS and/or artificial or prerecorded voice.

56. The Defendant's violations were negligent and/or knowing.

57. As a result of the Defendant violations of the TCPA, 47 U.S.C. § 227, Plaintiffs and members of the Classes are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B). The Court may award up to $1,500 if the violation is found to be "knowing or willful". *Id.*

58. Plaintiffs and members of the Classes are also entitled to and do seek injunctive relief prohibiting Defendant from violating the TCPA, 47 U.S.C. § 227, by

making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

## Second Cause of Action

### Violation of the TCPA's Do Not Call provisions

59. Plaintiff Morris incorporates the allegations from all previous paragraphs as if fully set forth herein.

60. The Defendant violated the TCPA by (a) initiating telephone solicitations to persons and entities whose telephone numbers were listed on the Do Not Call Registry, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

61. The Defendant's violations were negligent and/or knowing.

62. As a result of the Defendant's violations of the TCPA, 47 U.S.C. § 227(c)(5), Plaintiff Morris and members of the Class are entitled of an award of up to $500 in damages for each call made in violation of this section. The Court may award up to $1,500 if the violation was found to be "willful or knowing".

63. Plaintiffs and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant from violating the TCPA, 47 U.S.C. § 227, by making calls advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry.

**Prayer for Relief**

For themselves and all class members, Plaintiffs request the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiffs as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Defendant's actions complained of herein violate the TCPA;

E. An order enjoining Defendant from making automated or pre-recorded calls;

F. An award to Plaintiff and the Classes for damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: March 11, 2019                    Respectfully Submitted,

                                         By:    */s/ Trinette G. Kent*
                                                Trinette G. Kent
                                                Kent Law Offices
                                                3219 E Camelback Rd #588
                                                Phoenix, AZ 85018